OPINION OF THE COURT
Per Curiam.
Petitioner brought this proceeding pursuant to 22 NYCRR 691.6 (a) to vacate a Letter of Reprimand issued by the Grievance Committee for the Tenth Judicial District.
The charge of misconduct that is relevant to this appeal was based on the public release by petitioner, then District Attorney of Kings County,* of a letter charging Judge Irving Levine with judicial misconduct in relation to an incident that allegedly occurred in the course of a trial on criminal charges of sexual misconduct (Penal Law § 130.20), and was reported to her some six weeks later. Specifically, petitioner’s letter stated that:
"Judge Levine asked the Assistant District Attorney, defense counsel, defendant, court officer and court reporter to join him in the robing room, where the judge then asked the victim to get down on the floor and show the position she was in when she was being sexually assaulted. * * * [T]he victim reluctantly got down on her hands and knees as everyone stood and watched. In making the victim assume the position she was forced to take when she was sexually assaulted, Judge Levine *189 profoundly degraded, humiliated and demeaned her.”
The letter, addressed to Judge Kathryn McDonald as Chair of the Committee to Implement Recommendations of the New York State Task Force on Women in the Courts, was publicly disseminated after petitioner’s office issued a "news alert” to the media.
Following a dispute over the truth of the accusations, Robert Keating, as Administrative Judge of the New York City Criminal Court, conducted an investigation into the allegations of judicial misconduct. His report, dated December 22, 1987, concluded that petitioner’s accusations were not supported by the evidence. Upon receipt of the report, Albert M. Rosenblatt, then Chief Administrative Judge, referred the matter to the Grievance Committee for inquiry as to whether petitioner had violated the Code of Professional Responsibility.
Some six months later, the Grievance Committee sent petitioner a private Letter of Admonition in which it stated that "the totality of the circumstances presented by this matter require that you be admonished for your conduct.” Petitioner’s misconduct, the Committee concluded, violated DR 8-102 (B), DR 1-102 (A) (5), (6) and EC 8-6 of the Code of Professional Responsibility.
In July 1988, after petitioner requested a subcommittee hearing pursuant to 22 NYCRR 691.6 (a), she was served with three formal charges of misconduct under DR 8-102 (B) and 1-102 (A) (5) and (6). Charge 1 alleged that petitioner had engaged in conduct that adversely reflected on her fitness to practice law in releasing a false accusation of misconduct against Judge Levine. Charge 2 related to petitioner’s subsequent videotaping of the complaining witness’s statement under oath, and release of the audio portion of the tape to the media, despite her knowledge that the complainant would be a necessary witness in other investigations. Charge 3 related to a later press release in which petitioner stated that she had knowledge of other allegations of misconduct involving the Judge, thereby further demeaning him. Only Charge 1 is in issue on this appeal.
The conduct set forth in Charge 1, allegedly demonstrating petitioner’s unfitness to practice law, included release of the letter to the media (1) prior to obtaining the minutes of the criminal trial, (2) without making any effort to speak with court officers, the court reporter, defense counsel or any other *190 person present during the alleged misconduct, (3) without meeting with or discussing the incident with the trial assistant who reported it, and (4) with the knowledge that Judge Levine was being transferred out of the Criminal Court, and the matter would be investigated by the Court’s Administrative Judge as well as the Commission on Judicial Conduct (to which the petitioner had complained).
After hearings, the subcommittee submitted its findings to the full Grievance Committee. The Committee sustained the first and third charges and issued petitioner a Letter of Reprimand, which was also private (22 NYCRR 691.6 [a]). The letter, dated October 19, 1989, stated that the Committee sustained Charges 1 and 3, and concluded that petitioner’s conduct was "prejudicial to the administration of justice and adversely reflects on [her] fitness to practice law in violation of DR 1-102 (A) (5) and (6) of the Code of Professional Responsibility.” No mention was made of DR 8-102 (B).
Petitioner then brought this proceeding seeking to vacate the Letter of Reprimand. The Appellate Division concluded that the record supported the Committee’s findings as to Charge 1, more specifically that petitioner’s conduct violated DR 8-102 and 1-102 (A) (6). We now affirm, agreeing with both the Grievance Committee and the Appellate Division that petitioner’s conduct violated DR 1-102 (A) (6), and we reach no other question.
Petitioner relies primarily on two arguments. First, she asserts that the allegations concerning Judge Levine’s conduct were true or at least not demonstrably false. Second, petitioner asserts that her conduct violates no specific disciplinary rule and further that DR 1-102 (A) (6), if applicable, is unconstitutionally vague. These contentions are without merit.
The factual basis of Charge 1 is that petitioner made false accusations against the Judge. This charge was sustained by the Committee and upheld by the Appellate Division, and the factual finding of falsity (which is supported by the record) is therefore binding on us.
As for the contention that petitioner’s conduct did not violate any provision of the Code, DR 1-102 (A) (6) (now DR 1-102 [A] [7]) provides that a lawyer shall not "[e]ngage in any other conduct that adversely reflects on [the lawyer’s] fitness to practice law.” As far back as 1856, the Supreme Court acknowledged that "it is difficult, if not impossible, to enumerate and define, with legal precision, every offense for which an *191 attorney or counsellor ought to be removed” (Ex parte Secombe, 19 How [60 US] 9, 14). Broad standards governing professional conduct are permissible and indeed often necessary (see, In re Charges of Unprofessional Conduct Against N.P., 361 NW2d 386, 395 [Minn], appeal dismissed 474 US 976).
Such standards are set forth in Canon 1 and particularly in DR 1-102. An earlier draft of the Code listed "conduct degrading to the legal profession” as a basis for a finding of misconduct under DR 1-102, but this provision was replaced by the "fitness” language of DR 1-102 (A) (6) and the "prejudicial to the administration of justice” standard of DR 1-102 (A) (5) (see, Annotated Code of Professional Responsibility, Textual and Historical Notes, at 12). The drafters of the Code refined the provisions to provide attorneys with proper ethical guidelines. Were we to find such language impermissibly vague, attempts to promulgate general guidelines such as DR 1-102 (A) (6) would be futile.
Rather than an absolute prohibition on broad standards, the guiding principle must be whether a reasonable attorney, familiar with the Code and its ethical strictures, would have notice of what conduct is proscribed (see, Committee on Professional Ethics & Conduct v Durham, 279 NW2d 280, 283-284 [Iowa]; see also, In re Ruffalo, 390 US 544, 554-555 [White, J., concurring]; Matter of Cohen, 139 AD2d 221).
Applying this standard, petitioner was plainly on notice that her conduct in this case, involving public dissemination of a specific accusation of improper judicial conduct under the circumstances described, could be held to reflect adversely on her fitness to practice law. Indeed, her staff, including the person assigned the task of looking into the ethical implications of release to the press, counseled her to delay publication until the trial minutes were received.
Petitioner’s act was not generalized criticism but rather release to the media of a false allegation of specific wrongdoing, made without any support other than the interoffice memoranda of a newly admitted trial assistant, aimed at a named Judge who had presided over a number of cases prosecuted by her office (see, Matter of Terry, 271 Ind 499, 502-503, 394 NE2d 94, 95-96, cert denied 444 US 1077). Petitioner knew or should have known that such attacks are unwarranted and unprofessional, serve to bring the Bench and Bar into disrepute, and tend to undermine public confidence in the judicial system (see, Matter of Bevans, 225 App Div 427, 431).
*192 Therefore, petitioner’s conduct was properly the subject of disciplinary action under DR 1-102 (A) (6), and it is of no consequence that she might be charged with violating DR 8-102 (B) based on this same course of conduct (see, In re Huffman, 289 Ore 515, 522, 614 P2d 586, 589; Committee on Professional Ethics & Conduct v Durham, 279 NW2d, at 285, supra; Matter of Terry, 271 Ind, at 501, 394 NE2d, at 94, supra). Indeed, in the present case there are factors that distinguish petitioner’s conduct from that prohibited under DR 8-102 (B) — most notably, release of the false charges to the media — and make it particularly relevant to her fitness to practice law.
Petitioner contends that her conduct would not be actionable under the "constitutional malice” standard enunciated by the Supreme Court in New York Times Co. v Sullivan (376 US 254). Neither this Court nor the Supreme Court has ever extended the Sullivan standard to lawyer discipline and we decline to do so here.
Accepting petitioner’s argument would immunize all accusations, however reckless or irresponsible, from censure as long as the attorney uttering them did not actually entertain serious doubts as to their truth (see, St. Amant v Thompson, 390 US 727, 731; Trails West v Wolff, 32 NY2d 207, 219). Such a standard would be wholly at odds with the policy underlying the rules governing professional responsibility, which seeks to establish a "minimum level of conduct below which no lawyer can fall without being subject to disciplinary action.” (Code of Professional Responsibility, Preliminary Statement.)
Unlike defamation cases, "[professional misconduct, although it may directly affect an individual, is not punished for the benefit of the affected person; the wrong is against society as a whole, the preservation of a fair, impartial judicial system, and the system of justice as it has evolved for generations.” (Matter of Terry, 271 Ind, at 502, 394 NE2d, at 95, supra.) It follows that the issue raised when an attorney makes public a false accusation of wrongdoing by a Judge is not whether the target of the false attack has been harmed in reputation; the issue is whether that criticism adversely affects the administration of justice and adversely reflects on the attorney’s judgment and, consequentially, her ability to practice law (see, In re Disciplinary Action Against Graham, 453 NW2d 313, 322 [Minn], cert denied — US —, 111 S Ct 67).
In order to adequately protect the public interest and main *193 tain the integrity of the judicial system, there must be an objective standard of what a reasonable attorney would do in similar circumstances (see, Louisiana State Bar Assn. v Karst, 428 So 2d 406, 409 [La]). It is the reasonableness of the belief, not the state of mind of the attorney, that is determinative.
Petitioner’s course of conduct satisfies any standard other than "constitutional malice,” and therefore Charge 1 must be sustained.
We have examined petitioner’s remaining contentions and conclude that they are without merit.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur in Per Curiam opinion; Chief Judge Wachtler taking no part.
Order affirmed, without costs.

 Although all proceedings conducted by the Grievance Committee were kept confidential and the decision of the Appellate Division was not published (see, 22 NYCRR 691.4 [j]), petitioner has expressly waived any right to confidentiality on this appeal.