STAR EDITORIAL, INC., Petitioner,

v.

UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF CALIFORNIA, Respondent.

**Rodney Dangerfield, Real Party-in-Interest.**

No. 93–70366.

United States Court of Appeals, Ninth Circuit.

Submitted July 28, 1993 *.

Decided Oct. 14, 1993.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir. R. 34–4.

Gary M. Grossenbacher, Leopold, Petrich & Smith, Los Angeles, CA and Slade R. Metcalf, Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin, New York City, for petitioner.

Deborah Drooz, Langberg, Leslie, Mann & Gabriel, Los Angeles, CA, for respondent and real party-in-interest.

Before: HUG, WIGGINS, and THOMPSON, Circuit Judges.

HUG, Circuit Judge:

Petitioner, Star Editorial, Inc. ("the Star"), seeks a writ of mandamus directing the district court to vacate its March 22, 1993, discovery order compelling the Star to disclose the identities of its confidential sources of information for an article it published about Rodney Dangerfield, a well-known entertainer, the real party in interest. We deny the petition.

## I.

### FACTS

On September 11, 1990, the petitioner published an article in its weekly tabloid, the Star, entitled "Vegas casino accuses Caddyshack funnyman: Rodney Dangerfield 'Swills Vodka By The Tumblerful, Smokes Pot All Day And Uses Cocaine.'" The article was based in part on allegations made in a counterclaim filed by the owner of Caesar's Palace Hotel in response to Dangerfield's breach of contract and negligence action brought against the casino owner and unnamed casino employees.

Dangerfield thereafter filed a libel action against the Star, its writers, Barry Levine and David LaFontaine, and others. The complaint admits that allegations taken from the court documents in the Caesar's Palace suit are privileged under the judicial proceedings privilege. The claim derives from statements in the article that quote unnamed employees of Caesar's Palace Hotel. The action was originally filed in the Superior Court for Los Angeles County and removed to the District Court on the basis of diversity of citizenship. Dangerfield alleged that the defendants published the September 11, 1990, Star article with knowledge that the quotations were false, misleading, and defamatory or with reckless disregard for whether they were true or false. The statements at issue describe four incidents involving Dangerfield that allegedly occurred at Caesar's Palace and contain direct quotes attributable to four unnamed Caesar's employees. The incidents described wild drunken conduct by Dangerfield, including: Trashing his hotel room, breaking a marble shower, being "blotto" in his flooded hotel room, standing in ankle-deep water with two naked girls, and chasing a female employee around his room with ice tongs saying he wanted to rip her clothes off.

In the course of discovery, Dangerfield's counsel deposed all of the available twenty non-confidential sources for the article identified by the petitioners. Deponents included defendant Barry Levine, the Star's Los Angeles Bureau chief at the time of publication, as well as Ron Delpit, who was assigned to work on the story in Las Vegas in tandem with David LaFontaine. However, Dangerfield did not depose LaFontaine, the reporter who interviewed the employees quoted in the article and who conveyed the information provided by those employees to Levine by telephone.

Defendants refused to disclose the confidential sources quoted in the article, asserting a privilege against disclosure under the California State Constitution. The Star contends that compelling disclosure of the confidential sources violates its qualified privilege against disclosure provided by Article I, Section II of the California Constitution. Dan-

gerfield moved to compel disclosure. On September 10, 1992, the magistrate judge denied the motion to compel. Dangerfield moved for reconsideration. After hearing oral argument on March 22, 1993, the district court granted the motion to reconsider and ordered defendants to divulge the identity of the confidential sources to Dangerfield's counsel. The district court's order limited the disclosure to counsel and only for the purpose of this litigation.

## II.

### JUSTIFICATION FOR MANDAMUS

■■ This case comes to us on a petition for a writ of mandamus. Mandamus is an extraordinary remedy that is used sparingly because it entails interference with the district court's control of the litigation before it. In order to assist our analysis in the appropriate use of mandamus, we identified certain guideline principles in *Bauman v. United States District Court,* 557 F.2d 650 (9th Cir. 1977). They are

(1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires.

(2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.)

(3) The district court's order is clearly erroneous as a matter of law.

(4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.

(5) The district court's order raises new and important problems, or issues of law of first impression.

*Id.,* at 654–55 (citations omitted). As we noted in *Bauman,* these guidelines are cumulative and may not all point to the same conclusion; in fact, it is unlikely that all of the guidelines will be met in any one case, and the decision often requires balancing of conflicting factors. *Id.,* at 655. The guidelines are not susceptible to mechanical application, but are a useful analytic framework regarding propriety of mandamus relief. *In*

*re Cement Antitrust Litigation,* 688 F.2d 1297, 1301 (9th Cir.1982).

■ Based upon the *Bauman* guidelines, the Star has not justified the issuance of a writ. The Star satisfied the first two *Bauman* factors. First, this writ is the only available means to obtain the desired result, that is, to prevent compelled disclosure. Second, if the district court erred in compelling disclosure, any damage the Star suffered would not be correctable on appeal. However, we conclude that the district court's order is not clearly erroneous as a matter of law, nor an "oft-repeated error."

## III.

### REPORTER'S PRIVILEGE

The Star asserts that compelling disclosure of its confidential sources violates a qualified privilege recognized by the California Supreme Court in *Mitchell v. Superior Court,* 37 Cal.3d 268, 208 Cal.Rptr. 152, 690 P.2d 625 (1984).

■ In determining the existence or extent of the privilege in this case, California law controls. Federal Rule of Evidence 501 provides that when a federal court hears a civil action in which state law provides the rule of decision, "the privilege of a witness, ... shall be determined in accordance with State law." Fed.R.Evid. 501. This defamation action was brought by Dangerfield against the Star in California Superior Court. Then, based on diversity of citizenship, it was removed to federal court. State law will clearly provide the rule of decision. Thus, it is clear that the existence and the extent of the claimed privilege is controlled by California law. The parties do not dispute the conclusion that California law applies, but the Star contends it was improperly applied by the district court. The Star asserts that the district court applied federal law, rather than following the privilege as delineated by the California Supreme Court in *Mitchell.*

■ In *Mitchell,* the California Supreme Court noted that under California constitutional and statutory law a publisher, editor, reporter, or other person connected with or employed by a newspaper cannot be ad-

judged in contempt for refusing to disclose the source of any information, while so connected or employed, for publication in a newspaper. *Id.*, 208 Cal.Rptr. at 155, 690 P.2d at 628. "Since contempt is generally the only effective remedy against a nonparty witness, the California enactments grant such witnesses virtually absolute protection against compelled disclosure." *Id.* However, the defendants in the *Mitchell* case were parties to the litigation and were subject to other sanctions and, therefore, sought "to assert a nonstatutory privilege based on the broad protections for freedom of the press enshrined in the United States Constitution and the correlative provision (art I, § 2, subd. (a)) of the California Constitution." *Id.* The Star, likewise being a party subject to sanctions in the litigation, seeks to invoke the nonstatutory privilege described in *Mitchell*.

In the process of interpreting the existence of a privilege under the California Constitution, the California Supreme Court in *Mitchell* considered the federal cases dealing with claims of a reporter's privilege under the United States Constitution. The court noted a decision of the United States Supreme Court in *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) and the absence of a reporter's privilege in the context of a grand jury investigation.[1] The court held in a civil context, however, that a case-by-case balancing of the interests involved was appropriate. The court stated:

> We conclude that in a civil action a reporter, editor, or publisher has a qualified privilege to withhold disclosure of the identity of confidential sources and of unpublished information supplied by such sources. The scope of that privilege in each particular case will depend upon the consideration and weighing of a number of interrelated factors.

*Mitchell*, 208 Cal.Rptr. at 159, 690 P.2d at 632.

The privilege that the California Supreme Court derives from the state constitution is fully applicable to this case under Fed. R.Evid. 501. Therefore, we examine in some detail the *Mitchell* case.

In *Mitchell*, the Synanon church and its founder brought a libel action against the reporters of a periodical article. During pretrial discovery, the plaintiffs sought to discover the sources of the article. When the reporters refused to produce documents that would reveal the identity of the confidential sources on the belief they were privileged to refuse, the Marin County Superior Court issued an order compelling production. *Id.*, 208 Cal.Rptr. at 154–55, 690 P.2d at 627–28.

The reporters sought a writ of prohibition to prevent enforcement of the order. The *Mitchell* defendants "assert[ed] a nonstatutory privilege based on the broad protections for freedom of the press enshrined in the United States Constitution and *the correlative provision (art I, § 2, subd. (a)) of the California Constitution.*" *Id.*, at 155, 690 P.2d at 628 (emphasis added). The California Supreme Court held that the reporters in the *Mitchell* case were entitled to a writ of prohibition and concluded that "in a civil action a reporter, editor, or publisher has a qualified privilege to withhold disclosure of the identity of confidential sources and of unpublished information supplied by such sources." *Id.*, at 159, 690 P.2d at 632. The court then set forth various interrelated factors used to define the scope of the privilege in each particular case. *Id.*

■ The *Mitchell* court balanced these factors in arriving at its conclusion that it would not compel the Mitchells to disclose certain documents that would reveal confidential sources. The factors included (1) the nature of the litigation, (2) the relevance of the information sought, (3) the exhaustion of all other available sources, (4) the importance of confidentiality in each particular case, and (5) the ability of the plaintiff, in some cases, to make a *prima facie* showing of falsity. *Id.*, at 159–62, 690 P.2d at 632–35.

The district court noted that both parties relied on the *Mitchell* case as primary authority for their arguments. The district court, however, relied in part upon analysis of the federal law of constitutional privilege because the California Supreme Court in

---

**1.** Recently, we interpreted and applied the *Branzburg* decision relating to grand jury proceedings in *In re Grand Jury Proceedings (Scarce)*, 5 F.3d 397, 399–400 (9th Cir.1993).

*Mitchell* stated that the California Constitution and the United States Constitution are correlative provisions for the purposes of this nonstatutory privilege. *Id.,* at 155, 690 P.2d at 628. We conclude that the district court did consult federal case law, as did the California Supreme Court, but it was in fleshing out the same basic factors as were set forth in *Mitchell.* The balancing done by the district court was in accord with *Mitchell.*

Reviewing the *Mitchell* factors individually, the first factor considers the nature of the litigation and whether the reporter is a party. "In general, disclosure is appropriate in civil cases, especially when the reporter is a party to the litigation." *Id.,* at 159, 690 P.2d at 632. In a public-figure libel case, such as the one at hand, proving actual malice may be difficult without knowing the identity of the informant. Proof of malice may be supported by establishing that the informant is unreliable, or that no informant even exists. Without knowing the identity of the informant, such proof is difficult to establish. In the case before us, Dangerfield is a public figure and must thus prove actual malice to succeed on his defamation claim against the Star. Additionally, the Star is a media defendant. The district court noted that when a public-figure plaintiff brings a civil libel action against a media defendant, such as the Star, the balance weighs in favor of disclosure.

■ The second factor focuses on the relevance of the information sought. The *Mitchell* opinion noted that "mere relevance is insufficient to compel discovery [and] disclosure should be denied unless the information goes 'to the heart of the plaintiff's claim.' " *Id.,* (quoting *Garland v. Torre,* 259 F.2d 545 (2d Cir.1958)). The district court concluded that because Dangerfield seeks the identity of the informants to prove the Star acted with actual malice, the information sought goes to the heart of the claim. Actual malice would be extremely difficult to prove without knowing whether the confidential sources existed and, if so, what they said and whether they were credible.

■■ The third factor concerns whether Dangerfield exhausted all alternative sources of obtaining the needed information. "Compulsory disclosure is the 'last resort', permissible only when the party seeking disclosure has no other practical means of obtaining the information." *Id.,* 208 Cal.Rptr. at 161, 690 P.2d at 634 (citations omitted). Dangerfield interviewed all of the nonconfidential sources identified by the defendants and found that none had personal knowledge of the events. Dangerfield, himself, has denied the events reported by the Star. However, Dangerfield did not depose LaFontaine, the reporter who had interviewed all the informants directly. Though noting that the failure to depose LaFontaine is "troubling," the court thought that it was not determinative. Discovery revealed he had limited involvement in the production of the article. No doubt LaFontaine has personal knowledge pertinent to the case, but as the reporter for the Star involved in the Star organization, he is not truly an alternate source of the information. He would be subject to the direction of his superiors in claiming the privilege and would surely do so. We cannot say that the court's conclusion on this factor amounts to a clear error. Furthermore, he would be able to invoke the California statutory reporter's privilege, and is not subject to contempt for refusing to disclose the source of his information. Thus, as a nonparty, there is no other sanction available to compel him to reveal the confidential sources. There is no reason to consider LaFontaine an available alternate source.

■ Fourth, the *Mitchell* court considered the importance of protecting confidentiality in the case before the court. In some cases, concerns of retaliation or fear of exposure may justify refusing disclosure, even if the party has no other avenue to obtain the information. *Id.* However, the court limited this exception to cases where the information relates to matters of great public importance and the risk of harm to the source is substantial. *Id.* Even in this case, the district court recognized the importance of protecting confidentiality to prevent the risk of job loss to the informants and tailored its order to protect the sources by restricting disclosure to counsel and only for the purposes of this litigation.

Finally, *Mitchell* indicated that the court may require a prima facie showing that the statements were false in order to tip the balance in favor of discovery. *Id.* The district court also considered this factor. The sworn testimony of the plaintiff and the 15 persons identified by the Star as alternate sources indicated no knowledge of the events described in the article. Furthermore, the court noted the Star, itself, admitted that one of the reported incidents, the ice tong incident, did not occur. That is an adequate indication of falsity under this *Mitchell* factor.

## IV.

### CONCLUSION

The district court conducted the balancing required by California law in requiring the disclosure of the confidential sources. Mandamus is not justified.

**The petition is DENIED.**