[712 NYS2d 500]

In the Matter of PHILIP A. BYLER (Admitted as PHILIP ARWOOD BYLER), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, August 10, 2000

**APPEARANCES OF COUNSEL**

*Mady J. Edelstein* of counsel (*Thomas J. Cahill*, attorney), for petitioner.

*Philip A. Byler*, respondent *pro se.*

**OPINION OF THE COURT**

Per Curiam.

Respondent Philip A. Byler was admitted to the practice of law in the State of New York by the First Judicial Department on April 30, 1979, as Philip Arwood Byler. At all times relevant to the instant proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

On January 6, 1995, a complaint alleging professional misconduct was filed against respondent by former client James Morgan. After an investigation, the Departmental Disciplinary Committee issued a Letter of Admonition on July 15, 1996, which stated that respondent violated Code of Professional Responsibility DR 2-106 (d) (22 NYCRR 1200.11) by not fully informing Morgan of the implications of their fee agreement and by failing to reduce the agreement to writing and that he violated DR 9-102 (b) (4) (22 NYCRR 1200.46) by failing to sequester a disputed fee in an escrow account.

Respondent exercised his right to demand formal proceedings. Accordingly, he was served with a notice and statement of charges dated November 22, 1996. Charge One alleged that he failed to maintain client funds, in violation of DR 9-102 (b) (1), because he obtained a tax refund for Morgan and retained it for his personal use instead of returning it to Morgan or depositing it in escrow. Charge Two alleged that respondent did not promptly pay his client the aforementioned funds in his possession when Morgan objected to respondent's payment of the money to himself, in violation of DR 9-102 (b) (4) and (c) (4). Charge Three alleged that respondent engaged in conduct that adversely reflected on his fitness to practice law, in violation of DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3).

The evidence before the Hearing Panel may be summarized as follows. Beginning in June 1992, respondent represented his friend, James Morgan, in a dispute with Federal and New York State tax authorities over a disallowed deduction and an alleged tax deficiency owed by Morgan. There was no written fee agreement. Rather, respondent told Morgan that as an "accommodation" to his friend, he would not require a retainer. He would not bill Morgan while the matter was pending, and if litigation ensued, he would charge a flat fee of $20,000. At the time, both Morgan and respondent thought that these tax problems would be resolved quickly.

Respondent proceeded to perform legal services in this matter. In February 1993, as "a gesture I was making to him because he was helping me," Morgan gave respondent a check for $2,181.67. On April 18, 1994, respondent sent Morgan a letter advising him to accept an IRS compromise demand of approximately $17,000. A few days later, respondent sent Morgan a "non-bill bill" stating that respondent felt that a reasonable fee for his services would be $12,787.50, plus disbursements of $110, minus the $2,181.67 he had already received. Billing records reflecting 46 hours of work were attached. However, the letter also told Morgan to "let your conscience be your guide as to any further payment" and assured him that respondent was "*not* indicating that any payment is due now or ever." Morgan claimed he was surprised by this missive. He interpreted it as respondent's way of showing him how much work he had performed and that the case had taken longer than expected. Since it did not appear to be a bill, he did not pay anything.

Morgan and respondent met at the latter's office on June 8, 1994, to review the IRS demand for $17,837, which they determined to be incorrect. On June 14, the IRS notified respondent that it had corrected its calculations and discovered that Morgan was actually entitled to a "refund of indeterminate size." Respondent telephoned Morgan that day with the news. According to respondent, he told Morgan that he expected a refund of over $10,000. Morgan's account is slightly different: respondent did not mention a dollar amount, but the gist of their conversation was that the refund was not expected to be a significant amount. Morgan admits that he told respondent, "if we do get a check, keep it." In respondent's version of events, which the Hearing Panel did not credit, there was another conversation about fees on June 20, in which Morgan gave respondent a signed blank check and a deposit slip and said, "whatever it is, the refund is yours." However, Morgan claims that he gave respondent the blank check and deposit slip solely to make it easier for respondent to send a payment to the IRS on Morgan's behalf, in case that agency still charged him with a tax deficiency.

Ultimately, in October 1994, the IRS withdrew its assertion of a tax deficiency and sent respondent a refund check for $52,916.67, payable to Morgan. Needless to say, this was a far larger sum than the parties had anticipated during their ambiguous, off-hand discussions of respondent's fee. Upon receipt of the IRS check, respondent used Morgan's deposit slip

to deposit the refund into Morgan's bank account and then used the blank check to write himself a check for the full amount (minus $50 for bank fees). He argues that he did not need to notify Morgan beforehand because they had already agreed that respondent would keep the full refund as his fee.

When he wrote to Morgan about what he had done, his client immediately demanded that respondent hand over the money to him or place it in escrow while they resolved their fee dispute. To date, respondent has refused to comply with this request. In addition to the instant disciplinary proceeding, litigation is currently pending between Morgan and respondent.

The Hearing Panel issued its report and recommendation, sustaining Charges One and Two and recommending a one-year suspension. The Panel found respondent to be less credible than Morgan, but concluded that even if respondent's version of the facts were true, he violated DR 9-102 (b) (1) and (4) and (c) (4), because "no reasonably prudent attorney could have concluded that the alleged brief conversations with Morgan constituted an unequivocal and enforceable agreement—which Morgan had entered into on an adequately informed basis—that Respondent could retain a refund far greater than any amount Respondent had suggested to Morgan was possible or likely."

The Panel concluded that there was no meeting of the minds regarding either the fee or the possibility of a refund as high as $52,916.67. Thus, any reasonably prudent attorney would have recognized that Morgan's tax refund was "funds belonging to another person" that had been entrusted to respondent, within the meaning of DR 9-102 (b) (1), and that such funds should have been placed in escrow while the parties resolved the fee dispute (*see, Matter of Holtzman*, 78 NY2d 184, *cert denied* 502 US 1009 [promulgating "reasonable attorney" standard]).

The Panel rejected respondent's strained technical argument that the obligation to segregate funds entrusted to him only applied to funds that were officially labeled "escrow" by the parties or subject to a formal escrow agreement (*see, Matter of Salinger*, 88 AD2d 133, 135). Moreover, the fact that respondent hastily converted the funds to his own use and presented Morgan with a *fait accompli*, instead of notifying Morgan beforehand, suggested that respondent knew that his conduct was improper and contrary to his client's wishes.

In arriving at the recommended sanction, the Panel considered aggravating and mitigating evidence. Respondent's lack of

contrition, his stubborn refusal to acknowledge that there was even a basis for a dispute over his entitlement to the funds, and his less than candid explanations for his conduct, were aggravating factors. The mitigating factors considered were respondent's lack of a prior disciplinary record during his 22 years of practice, evidence of his good character and community service, and the favorable result he obtained for his client.

By petition dated January 31, 2000, the Departmental Disciplinary Committee seeks an order confirming the Hearing Panel's findings of fact and conclusions of law and imposing a one-year suspension. The Committee also requests that respondent be directed to place $52,916.67 in escrow by a date certain, pending the resolution of the litigation between respondent and Morgan. Respondent cross-moves to dismiss the petition and to supplement the record.

The Committee's motion should be granted and respondent's cross motion denied. The Panel's findings of fact and conclusions of law are fully supported by the evidence. Respondent did not deposit funds belonging to his client into an escrow account, as required by DR 9-102 (b) (1). He still refused to place the funds in escrow, despite Morgan's demand, in violation of DR 9-102 (b) (4), which states that a lawyer may not withdraw money for his fee from funds belonging to the client until any fee dispute with the client is resolved. Respondent's failure to turn over the funds to his client upon request also violated DR 9-102 (c) (4).

Suspension is warranted where an attorney has failed to return money that belongs to a client (*see, Matter of Pelsinger*, 190 AD2d 158 [three-year suspension for commingling funds]). Even now, respondent has refused to accept any responsibility for his actions or to deposit the funds in escrow, on the specious grounds that returning the money would be an admission of misconduct that would prejudice his position. The Hearing Panel's recommended sanction is well within the bounds of fairness.

In addition to his suspension, respondent should be directed to deposit $52,916.67 with the Clerk of Supreme Court, New York County, under index number 97-604955, in the litigation captioned *James Morgan and Karen Morgan v Philip A. Byler*, within 60 days of service of this order. The funds should remain in escrow during the pendency of the civil litigation between respondent and Morgan. We have considered and rejected respondent's other contentions.

Accordingly, the Committee's motion for an order confirming the Hearing Panel's findings, conclusions and recommended

sanction should be granted, respondent suspended for one year, effective immediately, and until the further order of this Court, and respondent's cross motion denied.

ROSENBERGER, J. P., WILLIAMS, TOM, ELLERIN and ANDRIAS, JJ., concur.

Petition granted to the extent of confirming the findings of fact and conclusions of law of the Hearing Panel and its recommended sanction and respondent suspended from the practice of law in the State of New York for a period of one year, effective the date hereof, and until the further order of this Court, as indicated. Cross motion denied.