**In re CHARGES OF UNPROFESSION-AL CONDUCT INVOLVING FILE NO. 17139, a Minnesota Attorney, in Panel Case No. 20783.**

No. A05–1955.

Supreme Court of Minnesota.

Sept. 7, 2006.

Martin A. Cole, Patrick R. Burns, Office
of Lawyers Professional Responsibility, St

Paul MN, for Lawyers Professional Responsibility Board.

William F. Mohrman, Charles R. Shreffler, Mohrman & Kaardal, P.A., Minneapolis MN, for Respondent Attorney in File No. 17139.

## OPINION

ANDERSON, RUSSELL A., Chief Justice.

On October 12, 2004, the Director of the Office of Lawyers Professional Responsibility issued charges against respondent [1] alleging a violation of Minn. R. Prof. Conduct 8.2(a), which prohibits knowingly or recklessly making false statements about the qualifications or integrity of, inter alia, a judge. In response, respondent asserted that he made the statement in question in good faith, relying on information obtained from two credible and reliable sources. However, respondent refused to disclose to the director the identities of his sources. Consequently, the director brought a motion in Ramsey County District Court seeking an order finding that his request for disclosure of respondent's sources was a "reasonable request" under Rule 25(a), Rules on Lawyers Professional Responsibility (RLPR), and that respondent therefore must comply with the request. The district court denied the motion, finding the request to be unreasonable. We granted review and now reverse.

On July 16, 2002, respondent filed as a candidate for a Minnesota state district court seat. According to respondent, on the evening of July 16, he received a telephone call from "an individual who [he] knew to be a credible and reliable source of information regarding the work habits of judges on the bench in [the relevant] [c]ounty." Respondent claims that this source told him that his opponent in the election, the incumbent judge, "consistently ranked as one of the highest judges in terms of absenteeism for the district bench" and that the incumbent judge's backlog of cases under advisement "exceeded that of the other judges in the District combined." The source also allegedly told respondent that "issues surrounding excessive absenteeism and case backlog" had been discussed at a district court judges' meeting in March 2002. Respondent asserts that "another credible and reliable source" verified the original source's statement about the topics discussed at the March district court judges' meeting. Respondent claims that he attempted to verify the information about the incumbent judge's case backlog, but was denied access to the cases-under-advisement records at the Minnesota Supreme Court.[2]

On August 15, 2002, respondent's campaign issued the following statement:

> The problem with my opponent's performance as a judge is that she doesn't show up, and she doesn't do the work. She has one of the highest rates of absenteeism for judges in the district, and, worse, her backlog of undecided and unfinished cases is larger than all of the other district judges combined.

As a result of this statement, an ethics complaint was filed with the Office of Lawyers Professional Responsibility (OLPR), alleging that respondent violated Minn. R.

---

1. Pursuant to Rules 25 and 20(a), Rules on Lawyers Professional Responsibility, respondent's identity has been kept confidential.

2. Respondent was denied access to the cases-under-advisement records pursuant to Rule 5 of the Rules of Public Access to Records of the Judicial Branch (amended 2005).

Prof. Conduct 8.2(a), which provides, "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge."

As part of the director's investigation, the director repeatedly asked respondent to disclose the identities of the sources who he claimed provided him with the information on which he based his statement, but respondent refused to do so. The director then brought a motion in Ramsey County District Court pursuant to Rule 25(a), RLPR, which requires lawyers to comply with the director's "reasonable requests" for information, seeking an order finding that his request for disclosure of respondent's sources was reasonable.

The district court denied the motion on the grounds that the request was "unreasonable and disproportionate to the complexity and gravity of the alleged ethical violation." The court faulted the director for focusing on the "singular issue" of respondent's sources, which the court characterized as simply one of many defenses raised by respondent. The court concluded that "[t]he OLPR is exaggerating the proceedings in attempting to make this something beyond what it actually is, a lawyer disciplinary action." We granted the director's petition for discretionary review.

▇▇▇▇ We have not before determined the appropriate standard for reviewing a district court's ruling on a Rule 25(a) request. The parties suggest that we apply an abuse of discretion standard, analogizing to review of a district court's ruling on a discovery motion, and we agree. In the context of civil litigation, "[a] district court

has broad discretion 'to issue discovery orders' and will be reversed on appeal only upon an abuse of such discretion." *Minn. Twins P'ship v. State ex rel. Hatch*, 592 N.W.2d 847, 850 (Minn.1999) (quoting *Shetka v. Kueppers, Kueppers, Von Feldt & Salmen*, 454 N.W.2d 916, 921 (Minn. 1990)). Rule 25(a) requests are analogous to civil discovery requests in that both provide a method for a party to obtain information relevant to its claim from another party. In light of the similarities between Rule 25(a) requests and discovery motions and in view of our delegation of oversight of Rule 25(a) requests to another court, we conclude that review for abuse of discretion is appropriate. *See In re N.P.*, 361 N.W.2d 386, 392 (Minn.1985). Applying this standard of review, the issue presented in this case is whether the district court abused its discretion by concluding that the director's request that respondent reveal the identities of his sources was not a reasonable request under Rule 25(a), RLPR.[3]

Rule 25(a) requires a lawyer subject to investigation or proceedings under the Rules on Lawyers Professional Responsibility to cooperate with the director by complying with reasonable requests for information:

It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with * * * the Director * * * by complying with *reasonable requests*, including requests to:

(1) Furnish designated papers, documents or tangible objects;

(2) Furnish in writing a full and complete explanation covering the matter under consideration;

---

**3.** Much of respondent's brief is directed at the merits of the allegation that he violated Rule 8.2(a). However, the merits of the charges against respondent are not before us because no petition for disciplinary action has been filed. Thus, we do not address respondent's arguments regarding whether his statement is punishable under Rule 8.2(a).

(3) Appear for conferences and hearings at the times and places designated;

(4) Execute authorization and releases necessary to investigate alleged violations of a conditional admission agreement.

Such requests shall not be disproportionate to the gravity and complexity of the alleged ethical violations. The District Court of Ramsey County shall have jurisdiction over motions arising from Rule 25 requests.

(Emphasis added.) We have not previously defined "reasonable requests" for purposes of Rule 25(a), nor does the rule itself define that phrase. Instead, the rule gives a nonexclusive list of requests that are considered reasonable and indicates that requests that are disproportionate to the gravity or complexity of the charges are unreasonable. Rule 25(a), RLPR; *see also N.P.*, 361 N.W.2d at 394.

To define "reasonable requests" for purposes of Rule 25(a), we look to the plain meaning of the word "reasonable." *The American Heritage Dictionary* defines "reasonable" as "being in accordance with reason," "being within the bounds of common sense," and "not excessive or extreme." *American Heritage Dictionary of the English Language* 1506 (3d ed.1992); *see also Black's Law Dictionary* 1293 (8th ed.2004) (defining "reasonable" as "[f]air, proper, or moderate under the circumstances").

In addition, the civil discovery rules provide guidance by analogy. Minnesota Rule of Civil Procedure 26.02(a) provides that in civil litigation "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to a claim or defense of any party." For good cause, a party to a civil case may obtain discovery "of any matter relevant to the subject matter involved in the action." Rule 26.02(a) also provides that a court may deny discovery requests that are unreasonably cumulative or unduly burdensome relative to the likely benefit to the party seeking discovery, in light of "the needs of the case, * * * the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

 Given the plain meaning of "reasonable" and the context in which the phrase "reasonable requests" is used in Rule 25(a), we interpret "reasonable requests" to mean requests that are rationally related to the disciplinary charges or to a defense raised by a lawyer undergoing investigation, so long as the requests are not unduly burdensome or unnecessarily cumulative. Accordingly, we hold that in ruling on motions under Rule 25(a) the Ramsey County District Court should ascertain whether the information sought is rationally related to the charges of professional misconduct or to a defense to those charges and should weigh the director's need for the information against the burden imposed on the lawyer.

In this case, the district court failed to perform the appropriate analysis when assessing the reasonableness of the director's request. The court did not analyze whether the requested information was rationally related to the charges of professional misconduct, nor did it consider the director's need for the information in light of his burden of proving a violation of Rule 8.2(a) by clear and convincing evidence. By failing to consider these pertinent factors and by failing to apply the correct standard, the district court abused its discretion. Further, language in the court's memorandum suggests that the court may have thought that the director was attempting to prevent respondent from raising a defense of good faith reliance on credible sources. This appears to have led the court improperly to focus on respondent's ability to assert particular de-

fenses, rather than on the director's need for the information or its relevance to the charges.

 The director's burden of proof in a disciplinary proceeding alleging a violation of Minn. R. Prof. Conduct 8.2(a) informs the reasonableness of the director's Rule 25(a) request in this case. To establish a violation of Minn. R. Prof. Conduct 8.2(a), the director must prove by clear and convincing evidence that the lawyer (1) made a false statement [4] (2) concerning the qualifications or integrity of a judge, and (3) that the lawyer either knew the statement was false or acted with reckless disregard as to its truth or falsity. *See In re Gherity,* 673 N.W.2d 474, 480 (Minn. 2004); Minn. R. Prof. Conduct 8.2(a). Rule 8.2(a) parallels the United States Supreme Court's holding in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), that a public official may not constitutionally recover damages for a defamatory falsehood regarding his official conduct unless the statement was made with " 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 279–80, 84 S.Ct. 710. Proof of actual malice requires a showing that the defendant made the statement with a "high degree of awareness of [its] probable falsity," *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), or that he "entertained serious doubts as to the truth of his publication," *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct.

1323, 20 L.Ed.2d 262 (1968). Actual malice is thus a subjective standard. *See Harte–Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989).

Unlike the subjective actual malice standard for defamation, we have held that an objective standard applies under Rule 8.2(a).[5] *In re Graham,* 453 N.W.2d 313, 321 (Minn.1990). In *Graham,* we reasoned that the different societal interests underlying lawyer rules of professional conduct and defamation laws justified interpreting Rule 8.2(a) as enunciating a standard other than subjective actual malice. 453 N.W.2d at 322. We observed:

"Defamation is a wrong directed against an individual and the remedy is a personal redress of this wrong. On the other hand, the Code of Professional Responsibility encompasses a much broader spectrum of protection. Professional misconduct, although it may directly affect an individual, is not punished for the benefit of the affected person; the wrong is against society as a whole, the preservation of a fair, impartial judicial system, and the system of justice as it has evolved for generations."

*Id.* (quoting *In re Terry,* 271 Ind. 499, 394 N.E.2d 94, 95 (1979)). Consequently, we concluded that the standard embodied in Rule 8.2(a) "must be an objective one dependent on what the reasonable attorney, considered in light of all his professional

---

4. While Rule 8.2(a) does not actually specify that a statement must be false to be punishable, the comments to the rule and our case law clearly indicate that the rule was meant to prohibit only *false* statements. *See* Minn. R. Prof. Conduct 8.2(a) cmt.—2005; *In re Graham,* 453 N.W.2d 313, 320–21 (Minn. 1990).

5. Other jurisdictions have similarly concluded that the appropriate standard for disciplining an attorney for making false statements about a judge or a candidate for judicial office is an objective one. *See, e.g., U.S. Dist. Court for the E. Dist. of Wash. v. Sandlin,* 12 F.3d 861, 867 (9th Cir.1993); *In re Chmura,* 461 Mich. 517, 608 N.W.2d 31, 44 (2000); *In re Holtzman,* 78 N.Y.2d 184, 573 N.Y.S.2d 39, 577 N.E.2d 30, 34 (1991).

functions, would do in the same or similar circumstances." *Id.*

Respondent contends that application of an objective standard under Rule 8.2(a) to statements made during a political campaign is unconstitutional because such a standard permits punishment of speech protected by the First Amendment of the United States Constitution. Respondent argues that the subjective actual malice standard instead must be applied. However, given the procedural posture of this appeal, we need not address the merits of respondent's constitutional challenge to the objective standard we have read into Rule 8.2(a).[6] Whether the standard under Rule 8.2(a) should be objective or subjective is relevant only insofar as it affects the narrow inquiry presented in this appeal—was the director's request reasonable under Rule 25(a)? In this case, we conclude that the reasonableness of the director's request does not turn on whether the director must prove objective or subjective recklessness.

■ As discussed above, a court evaluating the reasonableness of a Rule 25(a) request should ask whether the request is rationally related to the charges of professional misconduct or to a lawyer's defense to those charges and whether the request is unduly burdensome in light of the gravity and complexity of the charges. In this case, the identities of respondent's sources are extremely relevant—indeed, critical—to the ethical violation alleged. To prove a violation of Rule 8.2(a), the director must

establish that respondent either knew his statement to be false or acted with reckless disregard as to the falsity of the statement. Minn. R. Prof. Conduct 8.2(a). Under either an objective or subjective standard, the identities of respondent's sources and the information they conveyed to him are crucial to determining whether respondent acted with reckless disregard as to the falsity of his statement.[7] Under an objective standard, the director must prove that a reasonable lawyer in respondent's situation would have had serious doubts about the truth of respondent's statement. *See Graham*, 453 N.W.2d at 322. To do so, the director must know what information respondent had at the time he made the statement and from whom he obtained that information. Similarly, to determine whether respondent himself had serious doubts about the truth of his statement—the subjective actual malice standard—the director must assess the information available to respondent when he made the statement, including the identities of his sources and what those sources told him. Under either standard, evidence that respondent had no sources, that his sources were unreliable or uninformed, or that he misrepresented the information conveyed by his sources would be critical to proof of the requisite mental state.

Lawyer discipline cases involving Rule 8.2(a) and defamation cases applying the subjective actual malice standard confirm the relevance of the identities of respon-

---

**6.** We note that *Graham* did not involve core political speech during an election campaign. We have never held that an objective standard applies under Rule 8.2(a) to statements made during a political campaign. Because resolution of this issue is not necessary in this case, we leave decision of the issue for another day.

**7.** It is perhaps possible that the director could meet his burden of proof simply by demon-

strating the inherent incredibility of respondent's statement. We agree that certain statements may be so incredible that no one could believe them to be true, even if assured of their veracity by inside sources. However, on this record we cannot conclude that respondent's statement falls into this narrow category of wildly implausible statements.

dent's sources and the content of their communications to him. In *Graham*, we recognized the significance of the identity of a lawyer's source and the information the source conveyed to the lawyer in evaluating an alleged violation of Rule 8.2(a). *See id.*, 453 N.W.2d at 324. Similarly, defamation cases routinely acknowledge a plaintiff's need to discover the identity of a defendant's source to establish actual malice. *See Price v. Time, Inc.*, 416 F.3d 1327, 1346 (11th Cir.2005) (concluding that knowledge of the identity of a defendant's source is necessary for the plaintiff to prove its case); *Star Editorial, Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 7 F.3d 856, 861 (9th Cir.1993) ("Proof of malice may be supported by establishing that the informant is unreliable, or that no informant even exists. Without knowing the identity of the informant, such proof is difficult to establish."); *Zerilli v. Smith*, 656 F.2d 705, 714 (D.C.Cir.1981) ("Proof of actual malice will frequently depend on knowing the identity of the [defendant's] informant, since a plaintiff will have to demonstrate that the informant was unreliable * * *."); *Carey v. Hume*, 492 F.2d 631, 637 (D.C.Cir.1974) (noting that a plaintiff may prove actual malice by establishing that the defendant "had no reliable sources, that he misrepresented the reports of his sources, or that reliance upon those particular sources was reckless"). The United States Supreme Court, too, has noted that the identity of a defendant's source bears directly on the issue of actual malice. *See St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968) ("[R]ecklessness may be found where there are obvious reasons to doubt the veracity of the [defendant's] informant or the accuracy of his reports."). Thus, the identities of respondent's sources are highly relevant to a central issue in the disciplinary investigation.

Furthermore, the director's request is not disproportionate to the gravity or complexity of the ethical violation alleged. Respondent asserts that a violation of Rule 8.2(a) "verges on being a de minimus ethical violation." But our conclusion in an earlier case, that a lawyer's statements impugning the integrity of a judge in violation of Rule 8.2(a) warrant "at the very least a public reprimand," belies respondent's assertion. *Graham*, 453 N.W.2d at 325. Indeed, violation of Rule 8.2(a) has warranted suspension in the past. *See In re Nathan*, 671 N.W.2d 578, 586 (Minn.2003); *Graham*, 453 N.W.2d at 325.

In this case, the director does not seek cumulative information, nor would compliance with his request cause respondent undue hardship. The information sought is critical to the director's investigation of charges of serious ethical misconduct and is not unnecessarily burdensome. Contrary to the district court's observation, the director is not "exaggerating the proceedings" by seeking this information. If courts were routinely to deny the director discovery of a lawyer's source when a credible source is asserted as a defense to charges of a violation of Rule 8.2(a), enforcement of the rule would become extremely difficult.

In support of his argument that the director's request is unreasonable, respondent appears to assert a qualified journalist's privilege against compelled disclosure of his sources based on the freedom of the press guaranteed by the First Amendment of the United States Constitution. Because respondent's asserted privilege involves a question of constitutional law, we apply de novo review. *See State v. Shattuck*, 704 N.W.2d 131, 135 (Minn. 2005).

A threshold question is whether respondent qualifies as a "journalist" for pur-

poses of a First Amendment journalist's privilege. Courts attempting to define the scope of the class benefiting from the journalist's privilege have interpreted the class expansively to include anyone who "at the inception of the investigatory process, had the intent to disseminate to the public the information obtained through the investigation." *von Bulow ex rel. Auersperg v. von Bulow,* 811 F.2d 136, 143 (2d Cir. 1987); *accord Shoen v. Shoen,* 5 F.3d 1289, 1293 (9th Cir.1993). Applying this standard, the Northern District of Illinois has held that an advocacy organization that publishes a report in support of legislation may assert a journalist's privilege. *Builders Ass'n of Greater Chicago v. County of Cook,* No. 96 C 1121, 1998 WL 111702, at *4–5 (N.D.Ill. March 12, 1998) (concluding that "information gathered for political purposes is not outside the protections of the privilege if it was gathered with the intent to disseminate the information to the public"). Given this broad interpretation of the press, respondent may be entitled to assert a First Amendment journalist's privilege because it appears that he contemplated public dissemination of the information conveyed by his sources at the time he received it.

Turning to the substance of the privilege itself, we note at the outset that the Supreme Court has never expressly held that journalists enjoy a First Amendment privilege against compelled disclosure of their sources. *See Weinberger v. Maplewood Review,* 668 N.W.2d 667, 671 n. 5 (Minn. 2003). Nonetheless, the Court has recognized that the First Amendment affords some protection for news gathering because without such protection "freedom of the press could be eviscerated." *Branzburg v. Hayes,* 408 U.S. 665, 681, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). In *Branzburg,* the Court held that a journalist does not possess a First Amendment privilege to refuse to answer questions posed during a good-faith grand jury investigation. *Id.* at 667, 707, 92 S.Ct. 2646. Seven years later, in *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), the Court held that the First Amendment does not provide a journalist a privilege against discovery of the editorial process when the journalist is a defendant in a defamation case and such discovery is relevant to the issue of actual malice. *Id.* at 155, 169–70, 175, 99 S.Ct. 1635.

Despite the Supreme Court's holdings in *Branzburg* and *Herbert,* a majority of federal circuit courts have held that journalists have a qualified First Amendment privilege against compelled disclosure of their sources. *See Shoen,* 5 F.3d at 1292, 1292 n. 5. Courts have noted that the Supreme Court in *Branzburg* limited itself to the narrow issue of a reporter's obligation to answer questions before a grand jury and did not decide whether reporters have a privilege against compelled disclosure in civil proceedings. *See Zerilli,* 656 F.2d at 712 n. 42; *Baker v. F F Inv.,* 470 F.2d 778, 784 (2d Cir.1972). Courts recognizing the privilege have not settled on a single test, however, and the standard for overcoming the privilege varies significantly from court to court.[8]

---

8. *See, e.g., Ashcraft v. Conoco, Inc.,* 218 F.3d 282, 287 (4th Cir.2000) ("[W]e adopted the following three-part test: '(1) whether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information.' ") (quoting *LaRouche v. Nat'l Broad. Co.,* 780 F.2d 1134, 1139 (4th Cir.1986)); *Gonzales v. Nat'l Broad. Co.,* 194 F.3d 29, 33 (2d Cir.1999) (" '[D]isclosure may be ordered only upon a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources.' ") (quoting *In re Petroleum Prods. Antitrust Litig.,* 680 F.2d

Respondent cites *Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir.1972), in support of his assertion of a qualified journalist's privilege. In *Cervantes*, the Eighth Circuit articulated a test for determining when a defendant journalist may be compelled to disclose confidential sources in a libel suit prior to a summary judgment ruling. *Id.* at 994. The court concluded that a plaintiff in a libel action must first show "cognizable prejudice" before a court will compel disclosure of a journalist's sources. *Id.* The court indicated that cognizable prejudice exists, and compulsory disclosure is appropriate, when a plaintiff discovers evidence showing that the allegedly defamatory statements are "so inherently improbable that there are strong reasons to doubt the veracity of the defense informant or the accuracy of his reports" or uncovers evidence indicating that the defendant entertained serious doubts about the truth of his statements. *Id.*

▆▆▆ We have not before recognized a First Amendment journalist's privilege and have never adopted the standard set forth in *Cervantes*.[9] However, resolution of this case does not require that we de-cide whether a First Amendment journalist's privilege exists. Assuming, without deciding, that a First Amendment journalist's privilege exists and that respondent is entitled to assert that privilege, we conclude that the director has overcome the privilege under the *Cervantes* standard— the sole journalist's privilege test urged by respondent[10]—by making a "concrete demonstration that the identity of [respondent's] news sources will lead to persuasive evidence on the issue of malice." *Cervantes*, 464 F.2d at 994. The director has presented evidence showing the inherent improbability of respondent's statement that the incumbent judge's case backlog was greater than that of all of the other judges in the district combined. In *Cervantes*, the Eighth Circuit noted that a showing of inherent improbability strengthens the case for compulsory disclosure of a journalist's sources. *Id.* Here, the director notes that there were between 29 and 33 judges in the incumbent judge's district when respondent's statement was released. For the statement to have been true, the incumbent judge's case backlog would have to have been approximately 30 times greater than the average case backlog of the other judges, an inherently im-

5, 7 (2d Cir.1982)); *Bruno Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 595–97 (1st Cir.1980) (setting forth a balancing test in which a court weighs "the potential harm to the free flow of information * * * against the asserted need for the requested information"); *Riley v. City of Chester*, 612 F.2d 708, 716–17 (3d Cir.1979) (articulating a balancing test in which a court examines the relevance and necessity of the information, the type of case in which the information is sought, and the availability of other sources of the information); *Mitchell v. Superior Court of Marin County*, 37 Cal.3d 268, 208 Cal.Rptr. 152, 690 P.2d 625, 632–34 (1984) (describing a balancing test in which a court weighs (1) "the nature of the litigation and whether the reporter is a party," (2) the relevance of the information to the plaintiff's case, (3) whether the plaintiff has exhausted alternative sources of the information, (4) the importance of protecting confidentiality in the particular case, and (5) whether the plaintiff has made a prima facie showing of falsity).

9. Rather, we have expressed disagreement with those courts that have interpreted *Branzburg* as articulating a First Amendment journalist's privilege in the context of criminal proceedings. *State v. Turner*, 550 N.W.2d 622, 627 (Minn.1996).

10. Respondent does not urge our adoption of, or even discuss, the journalist's privilege tests formulated by courts other than the Eighth Circuit in *Cervantes*. Without briefing on these tests, we cannot properly analyze their application in this case.

probable proposition.[11]

Given the showing of inherent improbability[12] and the "cognizable prejudice" to the director's case if disclosure of respondent's sources is not ordered, the director has satisfied the *Cervantes* standard for compelled disclosure of a journalist's sources. We note that courts facing the assertion of a First Amendment journalist's privilege by a defendant in a defamation case—a position analogous to that of the director in this case—have often emphasized the plaintiff's need for disclosure of the journalist's sources and have frequently held that the plaintiff has overcome the privilege. *E.g., Miller v. Transamerican Press, Inc.,* 621 F.2d 721, 727 (5th Cir.1980); *Carey,* 492 F.2d at 637–39; *Garland v. Torre,* 259 F.2d 545, 550 (2d Cir.1958). Because any First Amendment journalist's privilege that respondent may be entitled to assert has been overcome by the director under the *Cervantes* standard, we decline to break new ground in our jurisprudence by recognizing a First Amendment journalist's privilege in this case. We are reluctant to articulate a new principle of constitutional law without the benefit of thorough briefing by the parties, particularly where the principle has not been firmly established by the Supreme Court, and federal courts of appeals differ as to the appropriate standard.

Our decision today does not leave journalists without any protection against compelled disclosure of their sources. The Minnesota Free Flow of Information Act, Minn.Stat. §§ 595.021–.025 (2004), provides a statutory privilege against compelled disclosure of a journalist's sources. *See Weinberger v. Maplewood Review,* 668 N.W.2d 667, 672 (Minn.2003). However, respondent does not assert the statutory privilege, and we therefore do not analyze its application in this case.

In conclusion, we hold that the district court abused its discretion by finding that the director's request was not reasonable under Rule 25(a) because the court did not consider the appropriate factors in evaluating the reasonableness of the request. Because the director seeks information that is rationally related to the charges of professional misconduct and because the request is not disproportionate to the severity of the charges, the director's request is reasonable.

Reversed.

Concurring, ANDERSON, PAUL H., J.

Dissenting, ANDERSON, G. BARRY, and GILDEA, JJ.

ANDERSON, PAUL H., Justice (concurring).

I concur in the decision of the majority, but write separately to note only a qualified agreement with the majority's discussion of a First Amendment journalist's privilege. I agree that within the procedural context of this case, respondent is not entitled to prevail upon assertion of a

---

11. Respondent himself admits that this interpretation of his statement is "something no one would believe." However, respondent urges a different interpretation of the statement. Respondent argues that, for purposes of his statement, "combined" means "average," and, thus, his statement simply indicated that the incumbent judge's case backlog was greater than the average case backlog of other judges in the district. Respondent does not cite any authority for the proposition that "combined" means "average," nor does he explain why he did not simply use the word "average," if that was his intended meaning.

12. Our conclusion that respondent's statement is inherently improbable such that disclosure of his sources is proper under *Cervantes* should not be equated with a conclusion that respondent's statement is so incredible that he necessarily must have entertained serious doubts about its accuracy.

First Amendment journalist's privilege. Nevertheless, I concur because I conclude that in a different context, I may well construe the First Amendment journalist's privilege more broadly than does the majority. My need to concur is further amplified by the fact that, in light of our decision in *Weinberger v. Maplewood Review*, 668 N.W.2d 667 (Minn.2003) (Justice Helen Meyer dissenting, joined by Justice Paul H. Anderson), I do not share the majority's confidence that the Minnesota Free Flow of Information Act as construed by our court leaves journalists sufficiently protected against improper demands to compel disclosure of their sources.

ANDERSON, G. BARRY, Justice (dissenting).

The majority holds that the district court abused its discretion when analyzing whether to grant the director's request that respondent reveal the identities of his sources. Furthermore, the majority concludes that the director's request was reasonable and should have been granted. I agree with the standard the majority sets out for analyzing requests under Rule 25(a), Rules on Lawyers Professional Responsibility (RLPR) and that the district court's analysis of this issue was flawed. Despite this, I respectfully dissent because my review of the record leads me to conclude that the director's request was unreasonable.

As the majority states, when a court evaluates whether a Rule 25(a) request is reasonable, it "should ask whether the request is rationally related to the charges of professional misconduct or to a lawyer's defense to those charges and whether the

request is unduly burdensome in light of the gravity and complexity of the charges." The director's request for the identity of respondent's sources must therefore be analyzed in light of the nature of the charges of professional misconduct against respondent. I agree with the majority that, in order to demonstrate that respondent violated Minn. R. Prof. Conduct 8.2(a), the director must show by clear and convincing evidence that respondent (1) made a false statement, (2) which concerned the qualifications or integrity of a judge, and (3) that respondent either knew this statement was false or acted with reckless disregard to its truth or falsity. The identity of respondent's sources is principally related to the third element of a Rule 8.2(a) violation.

While I concede that the identity of the sources is clearly rationally related to the charges against respondent and respondent's potential defenses, in light of information already available to the director for a case against respondent, I conclude that the director's request is unreasonable and "disproportionate to the gravity and complexity of the alleged ethical violation[ ]." *See* Rule 25(a), RLPR. Whether an objective standard or a subjective "actual malice" standard is used for Rule 8.2(a) violations, on this record the director has ample evidence to allege a violation of Rule 8.2(a).[1] Respondent's August 2002 statement, alleging that the incumbent judge had a "backlog of undecided and unfinished cases * * * larger than all of the other district judges combined" can be construed as inherently incredible in light of the fact that between 29 and 33 judges

---

1. Although I conclude that the evidence here is sufficient for the director to allege a violation of the applicable rule, that conclusion should not be construed as an endorsement of the wisdom of disciplinary action under these facts. The decision to pursue disciplinary action is a discretionary decision by the director, *see* Rule 7(d), RLPR, and that discretion is informed by many factors including but not limited to the gravity of the alleged offense, likely defenses, and the appropriate use of office resources.

were in the incumbent judge's district when the statement was released. Moreover, respondent concedes that he "modified" this statement the next month in a subsequent press release stating "[t]he problem with my opponent's performance as a judge is that she doesn't show up, and she doesn't do the work. She has a high rate of absenteeism, and has a history of not making timely decisions and carrying a load of unfinished cases on her desk." This modification provides further evidence to support an allegation of respondent's knowledge or reckless disregard of the falsity of the August statement. Given this evidence, the district court did not err in denying the director's request to learn the identity of respondent's sources.[2] I would affirm the district court although on other grounds.

GILDEA, Justice (dissenting).

I join the dissent of Justice G. Barry Anderson.

---

2. At oral argument, respondent requested that this matter be remanded to the district court with instructions for the court to conduct an examination, in camera, of respondent's two sources. After the district court has determined whether the sources were credible, respondent suggests that the district court would decide, or at least recommend to this court, whether the investigation against respondent should be dismissed. Because no petition for disciplinary action has been filed, it is premature to address whether an in camera review of respondent's sources is appropriate. Similarly, because it is premature, I would decline to address respondent's challenges based on First Amendment freedom of speech grounds.