■ ELIZABETH MARGRABE, Appellant, et al., Plaintiffs, v ANTHONY J. RUSCIANO II et al., Defendants. SEXTER & WARMFLASH, P.C., Nonparty Respondent. [865 NYS2d 339]—

In a shareholders' derivative action, the plaintiff Elizabeth Margrabe appeals from an order of the Supreme Court, Westchester County (Donovan, J.), dated August 20, 2007, which, after a hearing, granted the motion of nonparty Sexter & Warmflash, P.C., her former attorney, to fix a charging lien on

certain settlement proceeds and to direct the escrow agent to pay to it the sum of $120,000 together with any accrued interest.

Ordered that on the Court's own motion, the plaintiff's notice of appeal from a decision dated July 9, 2007 is deemed a premature notice of appeal from the order (see CPLR 5520 [c]); and it is further,

Ordered that the order is affirmed, without costs or disbursements.

On or about February 4, 2000 Elizabeth "Betty" Margrabe (hereinafter Betty) and her brother, Anthony J. "Tony" Rusciano III (hereinafter Tony) executed separate retainer agreements with the nonparty law firm Sexter & Warmflash, P.C. (hereinafter S & W) in relation to their ownership interests in various Rusciano family business entities, which were controlled by their cousin, Anthony J. "A.J." Rusciano II. Pursuant to the retainer agreement, the legal services to be rendered were for the purpose of "attempt[ing] to extricate you from the businesses, either by having the businesses redeem your interests or by having your cousin, Anthony, or his nominee, purchase your interests in the businesses, or a combination thereof." After negotiations failed to produce an amicable resolution and litigation was anticipated, Tony signed a second retainer agreement on or about April 13, 2001. A nearly identical retainer agreement was executed by Betty on or about April 18, 2001.

On or about December 10, 2001 Betty, her husband William "Bill" Margrabe (hereinafter Bill), and Tony entered into a written agreement prepared by S & W attorney Michael Present. The agreement provided that Betty and Bill would advance money to Tony to assist him in meeting certain financial commitments and to finance his share of the legal fees during the course of the litigation, and, upon conclusion of the litigation and receipt of proceeds, Tony would repay Betty and Bill the money advanced for Tony's benefit, with the balance to be split equally between Tony and Betty. In connection with the agreement, Tony executed a promissory note in the amount of $100,000.

On June 18, 2003 the parties entered into a stipulation in open court, pursuant to which Betty and Tony agreed to settle their derivative claims and sell their ownership interests in the Rusciano family business entities for $8,375,000 plus interest and a proportionate share of certain tax certiorari refunds. Although it was anticipated that a written stipulation embodying the terms dictated in open court would soon follow, the parties

could not agree on terms, so that negotiations and court proceedings continued into the following year.

On March 25, 2004 Bill, acting under a power of attorney executed by Betty, requested that Present "draw up a note, memorializing the existing loan from Betty and me to Tony." By that time, Tony allegedly owed Betty and Bill more than $400,000.

On March 30, 2004 S & W attorney David Warmflash received a telephone call from Tony's wife, who stated that Betty and Bill had stopped funding the loan and that she and Tony needed the money to pay their bills. That same day, Warmflash wired $8,000 from his personal account to Tony's bank account. Warmflash never discussed with Betty the $8,000 loan to Tony, and Present never drafted the updated promissory note requested by Bill. The closing of the written settlement agreement between the parties took place on May 10, 2004.

Following S & W's motion to fix a charging lien on the settlement proceeds pursuant to Judiciary Law § 475, which motion was opposed by Betty, a hearing was held on whether the law firm had been discharged for cause for breach of its fiduciary duty. At the hearing, S & W did not dispute that the $8,000 loan to Tony was in violation of the disciplinary rules, but contended that Betty was not compromised in the litigation as to constitute "for cause" termination. The Supreme Court agreed, reinstating its finding as to the reasonableness of the S & W's fee, and we affirm.

Here, Warmflash knew or should have known (see *Matter of Holtzman,* 78 NY2d 184, 191 [1991], *cert denied* 502 US 1009 [1991]) that his conduct in loaning money to Tony violated not only Code of Professional Responsibility DR 5-103 (b) (22 NYCRR 1200.22 [b]), which provides that "[w]hile representing a client in connection with . . . pending litigation, a lawyer shall not advance . . . financial assistance to [the] client," but also violated Code of Professional Responsibility DR 5-105 (b) (22 NYCRR 1200.24 [b]), which provides that "[a] lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests."

Although S & W's conduct clearly violated the Code of Professional Responsibility (see *Quinn v Walsh,* 18 AD3d 638 [2005]; *Matter of Winston,* 214 AD2d 677 [1995]; *Shelton v Shelton,* 151 AD2d 659 [1989]), this is not a case where the law firm's four-year representation of the parties was improper from the incep-

tion (*cf. Brill v Friends World Coll.*, 133 AD2d 729, 730 [1987]; *see Quinn v Walsh*, 18 AD3d 638 [2005]; *Pessoni v Rabkin*, 220 AD2d 732 [1995]). In fact, the law firm properly exercised its fiduciary duty to Betty and Tony from the time it commenced representation up until the time that the $8,000 loan was advanced on March 30, 2004 (*compare Matter of Winston*, 214 AD2d 677 [1995]), and no claim is made by S & W for additional fees for work performed after that date. Accordingly, the Supreme Court properly granted S & W's motion.

Betty's remaining contentions are without merit. Lifson, J.P., Ritter, Miller and Balkin, JJ., concur.