[985 NYS2d 87]

In the Matter of GREGG H. GROSSMAN, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, April 16, 2014

APPEARANCES OF COUNSEL

*Robert A. Green*, Hauppauge (*Nancy B. Gabriel* of counsel), for petitioner.

*McDonough & McDonough, LLP*, Garden City (*Chris McDonough* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition, dated September 28, 2011, containing three charges of professional misconduct. After a hearing, the Special Referee sustained all three charges. The Grievance Committee now moves to confirm the Special Referee's report, and to impose such discipline as this Court deems just and proper. The respondent opposes the motion with respect to charges one and two, arguing that the Grievance Committee failed to meet its burden of proof with respect to those charges. The respondent concedes that charge three was properly sustained, but only to the extent that his conduct was negligent rather than fraudulent. Additionally, the respondent urges that any discipline imposed be limited to a public censure.

The charges emanate from a common set of factual allegations, as follows:

On August 4, 2006, the respondent entered into a retainer agreement with Samuel Viera, Adela Viera, Jolman Viera, and Samuel Viera, Jr. (hereinafter collectively the Vieras), to represent their interests as the sellers of real property located in Bayshore (hereinafter the property) to Jack Daloya and Y'Tai Taraz (hereinafter together the purchasers). The respondent was referred to the Vieras by the purchasers, or the purchasers' attorney, who had referred matters to the respondent in the past. The property was being sold to avert foreclosure.

The respondent prepared a "Lease/Option to Buy Agreement," which purportedly enabled the Vieras to continue to

reside at the property, as tenants, and to buy back the property after one year.

A down payment in the sum of $45,000 was received by the respondent from the purchasers, and was deposited into the respondent's IOLA account. From the time he received the down payment, the respondent knew that the funds were going to be returned to the purchasers after the closing. However, the purchasers' mortgage lender was not aware of this. The respondent knew or should have known that the purchasers' mortgage lender would not have approved or funded the loan to the purchasers if it had been made aware that the down payment was being returned to the purchasers.

The closing occurred on August 4, 2006 at the office of the lender's attorney. The purchasers were required to bring $21,000 to the closing, to demonstrate to the lender that they had sufficient funds to close the transaction. The respondent received a check for $21,000 from the purchasers at the closing, which he deposited into his IOLA account. From the time he received the $21,000, the respondent knew that the funds would be returned to the purchasers after the closing. However, the purchasers' lender was not aware of this. The respondent knew or should have known that the purchasers' lender would not have approved or funded the loan to the purchasers if it had been made aware that the $21,000 was being returned to the purchasers.

At the closing, the attorney for the lender was instructed to issue two checks totaling $52,500 to JIN Builders, representing the net balance of the purchasers' mortgage proceeds. The respondent knew that JIN Builders was a company owned by the purchasers.

Following the closing, the respondent issued check No. 1189, dated August 8, 2006, from his IOLA account, payable to JIN Builders, in the sum of $66,000 (representing the $45,000 down payment plus the $21,000 delivered to the respondent at closing). The sellers, who were the respondent's clients, received two checks, totaling $18,500. The purchasers, through JIN Builders, received $118,500 of equity in the subject property ($52,500 plus $66,000), which should have been received by the sellers.

Charge one alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of former Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).

Charge two alleges that the respondent engaged in a conflict of interest by permitting persons who recommended him to render legal services for another to direct or regulate his professional judgment in rendering such legal services, in violation of former Code of Professional Responsibility DR 5-107 (a) and (b) (22 NYCRR 1200.26 [a], [b]).

Charge three alleges that the respondent engaged in conduct adversely reflecting upon his fitness to practice law in violation of former Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

In view of the respondent's admissions, and the evidence adduced at the hearing, we conclude that the Special Referee properly sustained all three charges.

With respect to charge one, we conclude that the charge was established by evidence of the respondent's *knowing* failure to correct misrepresentations that induced detrimental reliance by the lender. Specifically, the lender's attorney testified that, had he known that one or more of the checks brought to the closing by the purchasers were going to be redirected to JIN Builders, a company owned by the purchasers, the lender would not have gone forward with the transaction. Under these circumstances, the Special Referee correctly found that the Viera transaction bears all the indicia of a straw purchase or an equity-stripping scheme, and that the respondent knew, or should have known, that his failure, inter alia, to disclose to the lender that JIN Builders was an alter ego of the purchasers, and would receive most of the equity in the subject property, misled the lender to its detriment.

With respect to charge two, the evidence established that the Vieras were referred to the respondent by the purchasers or another of the purchasers' alter egos, to wit, Triumph Funding, also known as Triumph Mortgage (hereinafter Triumph). The respondent admittedly served on an attorney panel for Triumph, and had prior dealings with it. Under the totality of the circumstances, the Special Referee correctly found that Triumph determined the terms of the "Lease/Option to Buy Agreement," which ostensibly was prepared by the respondent, but was favorable to the purchasers. By preparing the agreement in accordance with Triumph's terms, and thereafter allowing the Vieras to execute it at Triumph's offices, after the closing, the respondent permitted the purchasers, or their alter ego Triumph, to direct or regulate his professional judgment for their benefit. The respondent failed in his duty to protect the interests of his

clients, the sellers herein, out of self-interest, and a desire to preserve his relationship with Triumph.

With respect to charge three, in determining whether an attorney has engaged in conduct adversely reflecting upon his or her fitness to practice law, "the guiding principle must be whether a reasonable attorney, familiar with the Code and its ethical strictures, would have notice of what conduct is proscribed" (*Matter of Holtzman*, 78 NY2d 184, 191 [1991]). We conclude, based upon the conduct alleged in charges one and two, that charge three was properly sustained. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the Court has considered that the respondent's misconduct arose, inter alia, from the omission or withholding of information from the lender, rather than an affirmative misrepresentation. While we also have considered the respondent's assertion that he cooperated fully with the Grievance Committee's investigation, we note that the respondent has a prior disciplinary history consisting of one letter of admonition and one letter of caution.

Under the totality of the circumstances, the respondent is suspended from the practice of law for a period of two years.

ENG, P.J., MASTRO, RIVERA, SKELOS and DILLON, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that the respondent, Gregg H. Grossman, is suspended from the practice of law for a period of two years, commencing May 16, 2014, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than November 16, 2015. In such application, the respondent shall furnish satisfactory proof that during said period that he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (2), and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Gregg H. Grossman, shall desist and refrain from

(1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Gregg H. Grossman, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).